**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

LAURA YELLIN,

       Plaintiff,

       v.

ARLINGTON COUNTY SHERIFF JOSE
QUIROZ, JR., et al.,

       Defendants.

No. 1:24-cv-01216-PTG-WBP

**PLAINTIFF YELLIN'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

August 30, 2024

Drake W. Darrah (*pro hac vice*)
NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (202) 748-1711
Email: drake.darrah@nad.org
Facsimile: (301) 587-1791

Ian S. Hoffman (VSB 75002)
Preston Smith (VSB 96908)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-6406
Email: Ian.Hoffman@arnoldporter.com
Facsimile: (202) 942-5999

*Counsel for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

ARGUMENT ................................................................................................................................... 3

I.    The Sheriff Defendants' Motion to Dismiss Should be Denied ......................................... 3

    A.    Ms. Yellin Has Stated a § 1983 Claim for Cruel and Unusual Punishment
        Against the Sheriff Defendants ........................................................................... 3

    B.    Ms. Yellin Has Stated a Failure to Train Claim Against Sheriff Quiroz ................ 7

    C.    Qualified Immunity Does Not Apply to the Sheriff Defendants ............................ 9

    D.    Ms. Yellin Does Not Assert § 1983 Claims Against the Sheriff in His
        Official Capacity .............................................................................................. 10

    E.    Ms. Yellin Has Stated ADA (Count II) and Rehabilitation Act (Count III)
        Claims Against Sheriff Quiroz in His Official Capacity ..................................... 10

    F.    Ms. Yellin Does Not Seek Punitive Damages under the ADA or
        Rehabilitation Act ............................................................................................ 12

II.    Magistrate Best's Motion to Dismiss Should be Denied .................................................. 12

    A.    Ms. Yellin Has Stated ADA (Count II) and Rehabilitation Act (Count III)
        Claims Against Magistrate Best in His Official Capacity ................................... 12

    B.    Magistrate Best Is Not Entitled to Judicial Immunity ........................................ 17

CONCLUSION .............................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B.D. v. Fairfax Cnty. Sch. Bd.*,
  2019 WL 692804 (E.D. Va. Feb. 19, 2019)........................................................10, 12

*Campodonico v. S.C. Dep't of Corr.*,
  2020 WL 2079099 (D.S.C. Apr. 30, 2020)................................................................5

*Chisolm v. McManimon*,
  275 F.3d 315 (3d Cir. 2001)....................................................................................14

*Clarke v. Clarke*,
  2021 WL 2953673 (E.D. Va. July 14, 2021).........................................................7, 8

*Crane v. Lifemark Hosps., Inc.*,
  898 F.3d 1130 (11th Cir. 2018) ..............................................................................14

*Danielson v. City of Va. Beach*,
  2011 WL 3664710 (E.D. Va. Aug. 19, 2011)............................................................5

*Durand v. Fairview Health Servs.*,
  902 F.3d 836 (8th Cir. 2018) ..................................................................................14

*E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ..................................................................................12

*Forrester v. White*,
  484 U.S. 219 (1988)...........................................................................................17, 19

*Fuller v. Holt*,
  2018 WL 11207482 (E.D.N.C. Nov. 21, 2018)..................................................18, 19

*Heyer v. U.S. Bureau of Prisons*,
  849 F.3d 202 (4th Cir. 2017) ....................................................................................8

*L.C. by & through Canzater v. S.C. Dep't of Soc. Servs.*,
  2017 WL 6619338 (D.S.C. Dec. 27, 2017) .............................................................6, 7

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
  507 U.S. 163 (1993)...................................................................................................5

*Estate of LeRoux v. Montgomery Cnty., Md.*,
  2023 WL 2571518 (D. Md. Mar. 20, 2023)..............................................................14

ii

*Linlor v. Polson*,
    263 F. Supp. 3d 613 (E.D. Va. 2017) ....................................................................12, 15

*Meade v. Mynes*,
    2020 WL 3697974 (S.D. W.Va. July 6, 2020) ...........................................................6

*Mireles v. Waco*,
    502 U.S. 9 (1991).......................................................................................................17

*Montgomery v. District of Columbia*,
    2022 WL 1618741 (D.D.C. May 23, 2022)................................................................16

*Moody v. City of Newport News, Va.*,
    93 F. Supp. 3d 516 (E.D. Va. 2015) ...........................................................................8

*Paulone v. City of Frederick*,
    787 F. Supp. 2d 360 (D. Md. 2011)...........................................................................16

*Porter v. Clarke*,
    923 F.3d 348 (4th Cir. 2019) ..................................................................................4, 8

*Robertson v. Las Animas Cnty. Sheriff's Dep't*,
    500 F.3d 1185 (10th Cir. 2007) ...........................................................................15, 16

*Seremeth v. Bd. of Cnty. Comm'rs of Frederick Cnty.*,
    673 F.3d 333 (4th Cir. 2012) .....................................................................................16

*Stump v. Sparkman*,
    35 U.S. 349 (1978).....................................................................................................17

*Thorpe v. Clarke*,
    37 F.4th 926 (4th Cir. 2022) .......................................................................................4

*Wilcox v. Brown*,
    877 F.3d 161 (4th Cir. 2017) ...................................................................................5, 6

**Regulations**

28 C.F.R. § 35.160(a)(1)..................................................................................................14

28 C.F.R. § 35.160(b)(2).................................................................................................14

**INTRODUCTION**

Laura Yellin is a deaf special education teacher who communicates primarily via American Sign Language ("ASL"). In July 2023, while suffering from several post-partum mental health conditions, Ms. Yellin was arrested for violating a protective order filed by her husband. What followed was a series of violations of Ms. Yellin's statutory and constitutional rights.

First, when appearing before Magistrate Best for a probable cause hearing, he refused her request for an ASL interpreter, even though all magistrates in Virginia have access to on-demand video remote interpretation ("VRI"). Second, while detained at the Arlington County Detention Facility ("ACDF"), the Sheriff Defendants placed Ms. Yellin into solitary confinement for nearly five weeks, allowing her out of her cell for only one hour per day—and on some days, not at all—while also denying her adequate medical and mental health treatment. The Sheriff Defendants also refused to provide Ms. Yellin with a variety of legally required accommodations, including by failing to provide ASL interpreters for medical interactions; failing to provide batteries or a charger for Ms. Yellin's cochlear implants, and failing to provide consistent access to the videophone commensurate with the access hearing detainees have to the telephone.

These Defendants knew (or should have known) better: both the Executive Secretary and the Arlington County Sheriff previously entered into settlement agreements with the U.S. Department of Justice in which they agreed to provide deaf persons like Ms. Yellin with necessary accommodations, including ASL interpreters. Yet, those agreements expired, and Defendants resumed their discriminatory conduct, this time against Ms. Yellin.

Both sets of Defendants have moved to dismiss, and the Court should deny both motions. Ms. Yellin has more than adequately stated each of her claims.

First, the Sheriff Defendants argue that Ms. Yellin must allege the details of exactly which Sheriff Defendant did what. This is not required. Ms. Yellin alleges that the 16 named Sheriff

1

Defendants who she interacted with were responsible for her care and custody, placed her into solitary confinement, and refused to provide her with legally required accommodations. This is sufficient—the details of "who did what" will be uncovered through discovery.

Second, the Sheriff Defendants attempt to dispute the veracity of several of Ms. Yellin's allegations with extraneous material, including a factual declaration and a few prison records. That is plainly inappropriate at the motion to dismiss stage, where the Court's review is limited to the Complaint (and any materials attached or incorporated into it), and where the Court must assume the truth of Ms. Yellin's allegations.

Third, Magistrate Best argues that Ms. Yellin's ADA and Rehabilitation Act claims fail because, even though he refused Ms. Yellin's request for an ASL interpreter, she nevertheless attempted to communicate with him through a text-to-speech function on her phone. But the law requires the provision of auxiliary aids and services that provide effective communication, and Ms. Yellin specifically alleges that this mode of communication was *not effective*. Magistrate Best also ignored her chosen accommodation, an ASL interpreter, which the law requires be given primary consideration.

Fourth, Magistrate Best argues he is entitled to judicial immunity, but no such immunity attaches where—as here—Magistrate Best was carrying out an administrative, not judicial, function in refusing to activate the VRI device that would have provided an ASL interpreter.

The Court should reject these and other arguments asserted by Defendants and deny both motions to dismiss.[1]

---

[1]  Ms. Yellin does not oppose dismissal of her claims against Secretary Hade (the Executive Secretary of the Supreme Court of Virginia) without prejudice so long as she may be permitted to reassert those claims against Secretary Hade in the event that Magistrate Best later argues that he is not subject to suit under the ADA or Rehabilitation Act, including on the ground that he is not

## ARGUMENT

**I.    The Sheriff Defendants' Motion to Dismiss Should be Denied**

**A.    Ms. Yellin Has Stated a § 1983 Claim for Cruel and Unusual Punishment Against the Sheriff Defendants**

The Sheriff Defendants first argue that Count 1, Ms. Yellin's § 1983 claim (cruel and unusual punishment), should be dismissed because she purportedly "complains that she was placed in solitary confinement, but she does not state who put her there." ECF 10 at 3.  That is incorrect: the Complaint alleges that 16 *named* officers at the Arlington County Detention Facility placed her in solitary confinement and failed to provide her with adequate medical care and mental health treatment while there.

In particular, Ms. Yellin alleges that the Sheriff Defendants—defined in the Complaint to include 16 named officers—"placed Ms. Yellin in solitary confinement for nearly five weeks." Compl. ¶ 5; *see also id*. ¶ 6 ("Sheriff Defendants placed Ms. Yellin in solitary confinement."); *id*. ¶ 18 ("Each [of the Sheriff's Deputies] was responsible for Ms. Yellin's detention and/or care while she was at ACDF."); *id*. ¶ 87 ("Sheriff Defendants subjected Ms. Yellin to extended periods of unmitigated segregation and solitary confinement, subjecting her to inhumane existence during her detention at ACDF."); *id*. ¶ 88 ("[Sheriff] Defendants housed Ms. Yellin in a single cell by herself for the duration of her confinement at ACDF . . . allow[ing her] out of her cell for only one hour of recreation time per day[.]"); *id*. ¶ 91 ("Sheriff Defendants disregarded Ms. Yellin's medical and other needs" while in solitary confinement); *id*. ¶ 93 (Sheriff Defendants "violat[ed] Ms.

---

a department, agency, or an instrumentality of the Commonwealth, and is thus not a public entity under those statutes.  If that occurs, Secretary Hade would be needed to afford Ms. Yellin relief for Magistrate Best's violations.

Yellin's constitutional rights as they placed Ms. Yellin in solitary confinement and kept her there for the duration of her detention.").

Ms. Yellin also alleges that the Sheriff Defendants—again defined as 16 named officers—"disregarded Ms. Yellin's medical and other needs in violation of the Eighth and Fourteenth Amendments of the United States Constitution." *Id*. ¶ 91. Ms. Yellin provides additional detail for several of these defendants, including that Defendant Summers "look[ed] into her cell window and laugh[ed] at her" instead of taking action in response to her serious medical needs (*id*. ¶ 55), and that Defendant Hill ignored her requests for mental health care while in solitary. *Id*. ¶ 58; *see also id*. ¶ 56 (alleging Defendant Bapoma was involved in plainly inadequate medical check-in).

The Sheriff Defendants nevertheless argue that Count 1 should be dismissed because Ms. Yellin's Complaint does not spell out "what each person did" (ECF 10 at 4) and does not identify *which* of the 16 named Sheriff Defendants were most responsible for placing her into solitary confinement. *See id*. at 3-4 (arguing Ms. Yellin "has not alleged who made the decision to place her in a cell by herself"). This argument fails because Ms. Yellin does not need to include such particularized allegations to state a claim. Rather, to state a § 1983 claim for cruel and unusual punishment, Ms. Yellin must allege that the Sheriff Defendants subjected her to conditions that inflicted harm that was "'objectively, sufficiently serious' to deprive [her] of 'the minimal civilized measure of life's necessities' and [that] officers subjectively acted with 'deliberate indifference to [her] health or safety' because they knew of but disregarded the inhumane treatment." *Thorpe v. Clarke*, 37 F.4th 926, 933 (4th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Porter v. Clarke*, 923 F.3d 348, 357 (4th Cir. 2019) (agreeing with other courts "that solitary confinement poses an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment"). This is precisely what she has alleged

4

here. *See, e.g.*, Compl. ¶¶ 87, 89 (alleging that "Sheriff Defendants subjected Ms. Yellin to extended periods of unmitigated segregation and solitary confinement," and noting that "[s]olitary confinement poses an objective risk of serious psychological and emotional harm to inmates in violation of the Eighth Amendment" and further that "[t]his risk is even greater for inmates with disabilities and mental health issues."); *id.* ¶ 91 (alleging that Sheriff Defendants disregarded Ms. Yellin's medical and other needs, despite having "actual knowledge of the substantial medical risks Ms. Yellin faced while in their custody," as well as "the known serious psychiatric risks that solitary confinement poses—particularly for those suffering from mental health issues.").

This is more than enough to satisfy the notice pleading requirements under Rule 8, and there is no requirement that Ms. Yellin plead her § 1983 claim with particularity under Rule 9(b). *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (observing that Rule 9(b) does not apply to "complaints alleging municipal liability under § 1983"); *Danielson v. City of Va. Beach*, 2011 WL 3664710, at *2 (E.D. Va. Aug. 19, 2011) ("[A] plaintiff asserting claims under § 1983 must satisfy only the usual requirements of notice pleading specified by the Federal Rules."); *Campodonico v. S.C. Dep't of Corr.*, 2020 WL 2079099, at *3 (D.S.C. Apr. 30, 2020) ("[P]leading with specificity is not required of a complaint stating a cause of action under § 1983.").

The Sheriff Defendants cite *Wilcox v. Brown*, 877 F.3d 161 (4th Cir. 2017), but that case is easily distinguished and does not impose any requirement that Ms. Yellin must plead each defendant's role with particularity. There, the plaintiff alleged that a prison superintendent had decided to stop a Rastafarian service, allegedly in violation of the plaintiff's free exercise rights. *Id.* at 165. The plaintiff also alleged that a chaplain had merely told the plaintiff about the superintendent's decision not to resume the service. *Id.* at 170. The district court held, and the

5

Fourth Circuit agreed, that the plaintiff failed to state a § 1983 claim against the chaplain because the plaintiff did not allege that the chaplain (rather than the superintendent) did anything unlawful. *See id*. Here, by contrast, Ms. Yellin has specifically alleged that 16 named defendants unlawfully placed Ms. Yellin into solitary confinement and disregarded her medical needs in violation of her constitutional rights. This is more than enough to state a claim.

Where, as here, discovery can reveal the specific roles that each officer played in placing Ms. Yellin into solitary confinement and keeping her there, the claim should proceed. For example, in *Meade v. Mynes*, 2020 WL 3697974, at *4 (S.D. W.Va. July 6, 2020), the plaintiff named five officers in a § 1983 excessive force claim. He alleged that all the officers were involved in the physical altercation, but he did not allege which ones physically struck him and which should be held liable as bystanders. *Id*. The defendant officers argued—much like the Sheriff Defendants do here—that plaintiff had failed to state a claim because he did not allege which officer did what. *See id*. The court rejected this argument and agreed with the plaintiff, who had argued that "discovery is necessary to identify the role each specific officer played during the occurrence described in the pleading." *Id*. Thus, the court held that the plaintiff had stated a § 1983 claim against all five defendants, even though he could not identify each of their roles at the pleading stage. *Id*.

Similarly, in *L.C. by & through Canzater v. S.C. Dep't of Soc. Servs.*, 2017 WL 6619338, at *1-2 (D.S.C. Dec. 27, 2017), the plaintiff asserted a § 1983 claim against one named defendant and two "Roe" (aka "Doe") defendants for allegedly violating the plaintiff's due process rights in connection with removing children from their parents. The defendants argued that the claim should be dismissed because the plaintiff had "failed to allege any individual actions of these defendants[.]" *Id*. at *2. The court rejected this argument and held that the plaintiff had stated a

claim because "[t]he complaint contains detailed factual allegations sufficient to satisfy the requirements of notice pleading." *Id*. The court also treated the named defendant, whose particular role was not spelled out in the complaint, as a type of Doe defendant whose role could be revealed through the discovery process. *See id*. at *2 and n.1 ("This Court understands 'true identity' [which may be uncovered through discovery] to encompass not just a person's name, but also that person's specific role in the complained-of events. . . . Thus, in the Court's view, at this time Defendant Alexis Eaddy is essentially a Jane Doe defendant." (citing *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982)).

So too here: Ms. Yellin has included detailed allegations about her placement and retention in solitary confinement at the hands of the 16 named Sheriff Defendants. Each defendant's "specific role in the complained-of events" can be "discovered through discovery." *Id*. at *2. Based on what is discovered, Ms. Yellin will have the opportunity to amend her Complaint to add more particular allegations, and the Sheriff Defendants will have the opportunity to move for summary judgment. For now, Ms. Yellin has stated a § 1983 claim that can proceed to discovery.

### B.    Ms. Yellin Has Stated a Failure to Train Claim Against Sheriff Quiroz

The Sheriff Defendants also argue that Count 1 as asserted against Sheriff Quiroz should be dismissed because Ms. Yellin purportedly failed to adequately allege that Sheriff Quiroz failed to train his subordinates. *See* ECF 10 at 4-5. Not so. To state a claim for failure to train, Ms. Yellin need only allege "(1) [that] the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) [that] the supervisor failed to train properly the subordinates thus, illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) [that] this failure to train actually caused the subordinates to violate the plaintiff's rights." *Clarke v. Clarke*, 2021 WL 2953673, at *6 (E.D. Va. July 14, 2021) (internal quotation marks and citation omitted). Ms. Yellin has alleged each of these three elements.

7

*First*, as discussed above, Ms. Yellin has alleged that the Sheriff Defendant officers violated her constitutional rights, including to be free from cruel and unusual punishment. *See also* Compl. ¶¶ 84-93.

*Second*, Ms. Yellin has alleged that Sheriff Quiroz "fail[ed] to train and supervise the deputies at ACDF who subjected Ms. Yellin to cruel and unusual punishment by placing her in solitary confinement and ignoring her mental health issues." *Id*. ¶ 92; *see also id*. ¶ 19 (alleging that "[t]he Sheriff is responsible for the training, supervision, and conduct of all deputies . . . under his command"). This element can be satisfied where either the supervisor was "aware of, and acquiesced in, a pattern of constitutional violations," *Clarke*, 2021 WL 2953673, at *7, or where a supervisor "fail[ed] to train its employees concerning an obvious constitutional duty that the particular employees are certain to face." *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (citations omitted).

Both are satisfied here. Solitary confinement can "pose a 'substantial risk' of serious psychological and emotional harm" that amounts to cruel and unusual punishment. *Porter*, 923 F.3d at 357. It is likewise well established that prison officials must provide adequate medical care to inmates in their custody and that a failure to do so can amount to cruel and unusual punishment. *See Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-12 (4th Cir. 2017) (holding that a deaf inmate had stated an 8th Amendment claim for cruel and unusual punishment based on prison's failure to provide ASL interpreter during medical appointments). Prison staff thus have an "obvious" duty to avoid inflicting such punishment on inmates in their care—particularly for inmates suffering from mental health problems. Further, Ms. Yellin alleges that Sheriff Quiroz was aware of a pattern of violations regarding deaf inmates, including based on the prior settlement with another deaf inmate (Mr. Zemedagegehu), and thus that he was "on notice of his obligations

8

to comply with the law regarding deaf inmates, including an obligation to train his employees on how to accommodate deaf individuals in their care." Compl. ¶ 92. As such, Ms. Yellin has adequately alleged that Sheriff Quiroz's failure to train illustrates deliberate indifference, satisfying the second failure to train element.

*Third*, Ms. Yellin alleges that Sheriff Quiroz's "failure to properly train and supervise his subordinates on the care of deaf inmates caused them to violate Ms. Yellin's Eighth and Fourteenth Amendment rights." *Id*. The Sheriff Defendants argue that "any purported lack of training on accommodations for a deaf person did not cause solitary confinement." ECF 10 at 5. But Ms. Yellin *has* alleged that such failure to train *did* cause the deprivation of Ms. Yellin's constitutional rights (*see* Compl. ¶ 92), which must be assumed true for purposes of resolving Defendants' motions to dismiss. Moreover, this allegation is plausible: had the Sheriff Defendants been adequately trained to provide Ms. Yellin with an ASL interpreter at the intake process—as she specifically requested (Compl. ¶¶ 3, 44)—she would have been able to communicate effectively with those officers, which may have avoided her placement into solitary confinement and violation of her constitutional rights in the first place.[2] Ms. Yellin has stated a failure to train claim.

### C. Qualified Immunity Does Not Apply to the Sheriff Defendants

The Sheriff Defendants also argue that qualified immunity bars Ms. Yellin's § 1983 claims because "there was no constitutional violation." ECF 10 at 7-8. However, the Sheriff Defendants assert no new arguments on this point. Rather, they include only one sentence of argument: "As discussed above, [Ms. Yellin] has not stated any violation of her constitutional rights against the

---

[2]    Indeed, though it is wholly inappropriate for the Court to consider the declaration of Captain Elston (ECF 10-1) in resolving the motion to dismiss, his assertion that Ms. Yellin *asked* to be placed into solitary confinement (*id*. ¶ 5) only underscores the lack of effective communication—and, indeed, the *mis*-communication—between the officers and Ms. Yellin.

Sheriff Defendants." *Id*. at 8.  Not so.  As discussed above (in this brief), Ms. Yellin *has* stated viable § 1983 claims against the Sheriff Defendants for cruel and unusual punishment and against Sheriff Quiroz for failure to train.  *See supra* Sec. I.A and I.B.

### D.    Ms. Yellin Does Not Assert § 1983 Claims Against the Sheriff in His Official Capacity

The Sheriff Defendants next argue that "Sheriff Quiroz is entitled to immunity with respect to [Ms. Yellin]'s § 1983 claims against him in his official capacity."  ECF 10 at 7.  But Ms. Yellin is not asserting any § 1983 claims against the Sheriff in his official capacity.  Her § 1983 claims are all asserted against the Sheriff Defendants—including Sheriff Quiroz—in their individual capacities.  *See* Compl. ¶ 86 ("Sheriff Defendants have, *in their individual capacities* acting under color of state law, deprived Ms. Yellin of her right to be free from cruel and unusual punishment.") (emphasis added); *id*. ¶ 92 ("Sheriff Quiroz, *in his personal capacity*, is also liable for violating Ms. Yellin's constitutional rights due to his failure to train and supervise . . .") (emphasis added). The Court should thus reject this argument as well.

### E.    Ms. Yellin Has Stated ADA (Count II) and Rehabilitation Act (Count III) Claims Against Sheriff Quiroz in His Official Capacity

Title II of the ADA and Section 504 of the Rehabilitation Act "both prohibit discrimination by public entities on the basis of disability."  *B.D. v. Fairfax Cnty. Sch. Bd.*, 2019 WL 692804, *2 (E.D. Va. Feb. 19, 2019) (citing 29 U.S.C. § 794(a); 42 U.S.C. § 12132).  "Because the statutes have very similar language, the Fourth Circuit applies the same analysis to discrimination claims brought under either statute."  *Id.*  "A violation of either statute is established by the plaintiff proving that (1) he has a disability; (2) he is otherwise qualified for the benefit or program in question; and (3) he was excluded from participation in or denied the benefits of such program, or otherwise discriminated against, due to his disability."  *Id.*  (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)).

Here, Ms. Yellin has clearly alleged that she has a disability (Compl. ¶¶ 13, 98, 118), that she was qualified to receive benefits and participate in the program at issue (*id*. ¶¶ 14, 99), and that Sheriff Quiroz denied her these benefits and the ability to participate, and discriminated against her on the basis of her disability (*id*. ¶¶ 106-112, 125-128).  Indeed, the Complaint alleges a litany of ADA and Rehabilitation Act violations by the Sheriff, including: failing to provide ASL interpreters during the booking and intake process (*id*. ¶¶ 44, 82(A), 109(A)); failing to provide ASL interpreters for medical interactions (*id*. ¶¶ 58, 109(C)); failing to utilize ASL interpreters available through video remote interpreting ("VRI") (*id*. ¶¶ 61-67, 82(D)); failing to provide consistent access to the videophone commensurate with the access hearing detainees have to the telephone (*id*. ¶¶ 68-77, 82(B), 109(D)); failing to provide batteries or a charger for Ms. Yellin's cochlear implants (*id*. ¶¶ 60, 82(E)).  These failures rendered Ms. Yellin unable to communicate effectively with the Sheriff's officers, Detention Facility personnel, and medical and mental health treatment providers.  *See generally id*. ¶¶ 106, 109, 125.  Ms. Yellin has stated claims for disability discrimination under the ADA and Rehabilitation Act.

In their motion, the Sheriff Defendants argue that Ms. Yellin's allegations are "not supported" by certain extrinsic "records" (ECF 10 at 6)—including a declaration of Captain Elston, ECF 10-1, and a Detention Facility "Activity log," ECF 10-2.  In particular, the Sheriff Defendants use these extraneous materials to directly challenge the factual veracity of Ms. Yellin's allegations, including that those Defendants refused her request for ASL interpreters at booking and intake (Compl. ¶¶ 3, 44, 82(A)), failed to give her consistent videophone access (*id*. ¶¶ 68-77, 82(B), 109(D)), and placed her into solitary confinement (*id*. ¶¶ 4, 6, 45-52, 87-93).

This argument can be readily dispatched in light of "the general rule that a court may consider only the allegations of a plaintiff's complaint in evaluating a motion brought under

11

Federal Rule of Civil Procedure 12(b)(6)." *Linlor v. Polson*, 263 F. Supp. 3d 613, 626 (E.D. Va. 2017). The "few limited exceptions" to this rule—namely, "exhibits attached to the Complaint and other documents expressly incorporated by reference"—are inapplicable here. *Id*. Further, "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks and citation omitted). "The Court . . . is not free to simply disbelieve the clear factual allegations of [the] Complaint on a 12(b)(6) Motion." *Linlor*, 263 F. Supp. 3d at 627.

Here, Ms. Yellin has more than adequately alleged that Sheriff Quiroz violated the ADA and Rehabilitation Act in a host of ways. Whether those allegations are "supported" or not "can be resolved only on summary judgment or at trial," after discovery. *Id*.

### F. Ms. Yellin Does Not Seek Punitive Damages under the ADA or Rehabilitation Act

The Sheriff Defendants also argue that Ms. Yellin's ADA and Rehabilitation Act claims should be dismissed because she "seeks punitive damages on her claims under these statutes." ECF 10 at 6. That is incorrect. The Complaint seeks punitive damages only for Ms. Yellin's § 1983 claim (Count I). *See* Compl. ¶ 133(A). The Court should thus reject this argument.

### II. Magistrate Best's Motion to Dismiss Should be Denied

### A. Ms. Yellin Has Stated ADA (Count II) and Rehabilitation Act (Count III) Claims Against Magistrate Best in His Official Capacity

As discussed above, to state an ADA or Rehabilitation Act claim, Ms. Yellin must allege that "(1) [s]he has a disability; (2) [s]he is otherwise qualified for the benefit or program in question; and (3) [s]he was excluded from participation in or denied the benefits of such program, or otherwise discriminated against, due to his disability." *B.D.*, 2019 WL 692804 at *2. Magistrate Best concedes that Ms. Yellin has alleged the first two elements but argues that she has not satisfied

the third element because she purportedly "alleges no facts demonstrating that she was excluded from services solely on the basis of her disability." ECF 8 at 3; *see also id*. at 5 (asserting Ms. Yellin's allegations do not "satisfy the element of intentional discrimination" for her Rehabilitation Act claim). This is incorrect.

Ms. Yellin more than adequately alleges that Magistrate Best discriminated against her on the basis of her disability. In particular, Ms. Yellin alleges that when she appeared before Magistrate Best, she "informed [him] of her disability and requested an ASL interpreter to ensure effective communication," and "Magistrate Best denied her request." Compl. ¶ 39; *see also id*. ¶ 2 (alleging Ms. Yellin "requested an ASL interpreter . . . but Magistrate Best denied her request— even though all magistrates in Virginia have access to on-demand video remote interpretation (VRI)"). Ms. Yellin further alleges that Magistrate Best "instructed Ms. Yellin to use the text-to-speech function on her phone," but "[t]his method did not ensure effective communication for Ms. Yellin, particularly in the high stakes context of a hearing to determine whether she would be detained." *Id*. ¶ 39; *see also id*. ¶ 2 (alleging a "lack of effective communication" with Magistrate Best); *id*. ¶ 42 (same); *id*. ¶ 106 (alleging "Magistrate Best['s] . . . failure to provide effective communication for Ms. Yellin"); *id*. ¶ 109(C) (alleging Magistrate Best's refusal to provide an ASL interpreter left Ms. Yellin "[u]nable to effectively communicate during the proceeding before Magistrate Best"); *id*. ¶ 125(H) (same).

Magistrate Best argues that Ms. Yellin fails to allege discrimination because "she *did* communicate with Best during the proceeding by means of the text-to-speech function on her phone," and thus she was not "excluded from the probable cause hearing solely on the basis of her disability." ECF 8 at 5; *see also id*. at 6 (similar). This argument is wrong because the ADA and Rehabilitation Act require the provision of auxiliary aids and services to ensure *effective*

13

communication. *See* 28 C.F.R. § 35.160(a)(1) ("A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public . . . with disabilities are as *effective* as communications with others.") (emphasis added); *id*. § 160(b)(2) ("The type of auxiliary aid or service necessary to *ensure effective communication* will vary in accordance with the method of communication used by the individual . . .") (emphasis added). The law also required Magistrate Best to "give primary consideration to the requests of the individual with disabilities"—here, Ms. Yellin. 28 C.F.R. § 35.160(b)(2).

As recited above, Ms. Yellin specifically alleged that she requested an ASL interpreter, and that the text-to-speech function on her phone did *not* provide effective communication. *See* Compl. ¶¶ 2, 42, 106, 109(C), 125(H). This allegation must be assumed true at the motion to dismiss stage. Further, whether a proposed accommodation "would have allowed the [Defendant] to effectively communicate with [Plaintiff], or whether the measures the [Defendant] employed were sufficient are questions of fact that cannot be resolved upon a motion to dismiss." *Estate of LeRoux v. Montgomery Cnty., Md.*, 2023 WL 2571518, *12 (D. Md. Mar. 20, 2023); *see also Durand v. Fairview Health Servs.*, 902 F.3d 836, 842 (8th Cir. 2018) (whether there was "effective communication" and thus "meaningful access" to a service is "a fact-intensive inquiry and is largely context-dependent."); *Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1135 (11th Cir. 2018) (given the "inherently fact-intensive" nature of the inquiry, "an effective-communication claim often presents questions of fact precluding summary judgment"); *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) ("[G]enerally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."). Accordingly, Ms. Yellin has adequately alleged that Magistrate Best discriminated against her on the basis of her disability.

14

Magistrate Best also asserts that he "did not order Yellin's detention" but instead "ordered her release with a $2,000 secured bond." ECF 8 at 4. Further, Magistrate Best suggests that this purported outcome somehow indicates a lack of discrimination against Ms. Yellin. *See id*. at 4 ("Her participation in this proceeding ultimately lead [*sic*] to Magistrate Best's order for her *release* on a $2,000 secured bond."); *id*. at 9 (similar). In support, Magistrate Best attaches to his motion a "Bail Determination Worksheet and Resulting Order." *Id*. at 3 (citing ECF 8-1). These assertions by Magistrate Best are both contrary to the allegations of the complaint, and also irrelevant to whether Ms. Yellin has stated a claim for discrimination. Thus, these assertions should be disregarded.

*First*, the "Commitment Order" attached to the Magistrate Judge's motion (ECF 8-1) should be disregarded at the motion to dismiss stage because it is not a document attached to, referenced in, or integral to the complaint. *See Linlor*, 263 F. Supp. 3d at 627. The Court should also reject Magistrate Best's attempt to rely on this Order to disprove Ms. Yellin's factual allegations, which must be assumed true at this stage of the proceeding, that she was detained.

*Second*, even if the Commitment Order could be considered, it does not demonstrate that Ms. Yellin was "released." At most, it shows that Magistrate Best ordered Ms. Yellin to be detained *unless* she paid a $2,000 bond. She was detained, not released.

*Third*, Ms. Yellin has adequately alleged disability discrimination even if the outcome of her hearing was an order that she be detained unless she paid a $2,000 bond. Regardless of the hearing outcome—and this is far from a positive outcome—she was still denied effective communication.[3] For example, in *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185

---

[3]     While Ms. Yellin is not challenging the outcome of her hearing before Magistrate Best, it would be reasonable to assume that, if he had provided an ASL interpreter and effective

(10th Cir. 2007), a hard of hearing individual was arrested and participated in a probable cause hearing without the needed accommodations. The defendants argued that "they did not discriminate against [the plaintiff] with regard to his probable cause hearing because . . . the charges against [him] were dismissed, and therefore [the plaintiff] was not injured as a result of any lack of accommodation." *Id.* at 1199. The court rejected this argument, observing that "defendants take too narrow a view of [Plaintiff's] 'injury.' Though the charges . . . were dismissed, he was denied the ability to participate in his probable cause hearing to the same extent as non-disabled individuals." *Id.* The court thus reversed the district court's grant of summary judgment in favor of the defendants on the plaintiff's ADA claim. *Id.* at 1200.[4]

So too here: regardless of the outcome of the hearing, Ms. Yellin was denied the ability to participate in her hearing due to Magistrate Best's refusal to provide an ASL interpreter and his insistence on using an ineffective method of communication. Ms. Yellin has stated a claim.

---

communication, thereby enabling Ms. Yellin to understand what he was saying to her and vice versa, then there may have been a more favorable outcome for Ms. Yellin, including potentially release on her own recognizance or release with an unsecured bond.

[4] *See also Seremeth v. Bd. of Cnty. Comm'rs of Frederick Cnty.*, 673 F.3d 333, 337 (4th Cir. 2012) (finding that a deaf individual had suffered an ADA injury when he was held in handcuffs at his home while his kids were questioned without qualified interpreters, even though the police ultimately decided not to arrest him. The Court found "his injuries stemmed from the very failure to communicate—an injury that would not have been inflicted on a person without full hearing capabilities."); *Montgomery v. District of Columbia*, 2022 WL 1618741 (D.D.C. May 23, 2022) (rejecting argument that a lack of accommodations did not affect the outcome of a criminal prosecution, and thus did not harm the plaintiff, because "the District's failure to accommodate his disability allegedly harmed [Plaintiff] . . . by depriving him of the opportunity to meaningfully access and fully participate in his interrogations"); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 391 (D. Md. 2011) (rejecting defendants' argument that plaintiff suffered no injury where defendants argued that "[n]either an ASL interpreter nor a perfectly functioning T.T.Y. would have made the slightest impact on accelerating Plaintiff's release," and observing that courts "have rejected a requirement that a plaintiff show a further injury beyond the discrimination as a predicate to *liability*" (as opposed to eligibility for compensatory damages).

**B.      Magistrate Best Is Not Entitled to Judicial Immunity**

Finally, Magistrate Best argues that he is entitled to judicial immunity "for his decision regarding bail." ECF 8 at 8-9. But he is not immune because Ms. Yellin is not asserting any claims based on "his decision regarding bail." Rather, the claims are based on his refusal to provide her with an ASL interpreter, an administrative—not judicial—function.

While judges are generally immune from money damages claims, judicial immunity may be overcome when either (a) the "actions are not taken in the judge's judicial capacity"; or (b) the actions, "though judicial in nature, [are] taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Judicial immunity thus does not apply to non-judicial acts, including administrative, legislative, or executive functions that judges may occasionally be assigned to perform. *See Forrester v. White*, 484 U.S. 219, 227 (1988). To determine whether a defendant acted in an official judicial capacity, a court must analyze: "[1] the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and "[2] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 35 U.S. 349, 362 (1978).

Here, Magistrate Best was not acting in an official judicial capacity when he refused Ms. Yellin's request for an ASL interpreter. *First*, the act of providing an ASL interpreter is not inherently judicial. Under the ADA and Rehabilitation Act, *all* public entities and places of public accommodation are required to provide auxiliary aids and services, including qualified ASL interpreters, where necessary to provide effective communication. Providing such aids and services is not a function "normally performed by a judge"—it is function performed by a host of public and private entities across the country, every day. *See Forrester*, 484 U.S. at 229 (finding that a judge was "acting in an administrative capacity" when he demoted and fired a probation officer, since "a judge who hires or fires a probation officer cannot be meaningfully distinguished

17

from . . . any other Executive Branch official who is responsible for making such employment decisions.").

*Second*, in requesting an ASL interpreter, Ms. Yellin was dealing with Magistrate Best in a preliminary, administrative capacity—not in a judicial capacity. Ms. Yellin's claim is not based on, and does not seek to challenge, the merits of Magistrate Best's decision, including as it relates to whether she should have been detained. Rather, her claim is based on Magistrate Best's refusal to allow her to effectively participate in the proceeding (in violation of federal law), which is contrary to the expectations of any party appearing before any judge. Indeed, under Magistrate Best's view of judicial immunity, a judge could put a blindfold and noise-canceling headphones on any person who appears before them—or erect a physical barrier between them—totally precluding the person's ability to participate in the proceeding. Yet, the judge would nevertheless be immune because the person is interacting with the judge in a judicial proceeding. Similarly, under this view of the law, judges could theoretically be immune for assaulting persons who appear before them, so long as the assault occurs in the course of a judicial proceeding. This is not, and should not be, the law. Magistrate Best refused to provide Ms. Yellin a simple accommodation— an ASL interpreter through a video remote interpretation ("VRI") service—that is readily available to all magistrates in Virginia due to a settlement with the Department of Justice. *See* Compl. ¶¶ 2, 41. This refusal silenced Ms. Yellin, excluding her from a proceeding where her liberty was at stake. This was an administrative, not judicial, act that violated the ADA and Rehabilitation Act.

Magistrate Best cites *Fuller v. Holt*, 2018 WL 11207482 (E.D.N.C. Nov. 21, 2018), but that case is both distinguishable and does not stand for a bright line rule that all judges are immune from all ADA or Rehabilitation Act claims, as Magistrate Best suggests. In *Fuller*, a *pro se* plaintiff, who suffered from Attention Deficit Hyperactive Disorder ("ADHD"), brought a federal

18

ADA claim as a means of attacking his state criminal prosecution, which the court rejected. *Id.* at *3. He also asserted damages claims "in passing" (*id.* at *4 n.4), based on the state court's refusal to accommodate his demands, including that the state court "not mak[e] unexpected changes to the court's agenda" and "provide him with a diagram of how the proceeding would unfold." *Id.* at *2. The federal court held that these state court decisions—which included "decisions made from the bench about how to conduct a criminal court proceeding"—were judicial, not administrative, in nature and thus subject to judicial immunity. *Id.* at *4. Ms. Yellin's claim, on the other hand, is not attempting to attack the validity or outcome of any state court proceeding, nor is it seeking to challenge the manner in which Magistrate Best carried out the substance of the proceeding. Instead, it is attacking his refusal to activate the VRI system to provide Ms. Yellin an ASL interpreter. This is an administrative function akin to turning on the lights or activating the microphones. *See Forrester*, 484 U.S. at 228 ("Administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts."). Accordingly, Magistrate Best is not entitled to judicial immunity, and Ms. Yellin's ADA and Rehabilitation Act claims should proceed against him.

## CONCLUSION

For the foregoing reasons, the Court should deny the Sheriff Defendants' Motion to Dismiss (ECF 9), and Magistrate Best's Motion to Dismiss (ECF 7).

19

Dated:  August 30, 2024

Respectfully submitted,

/s/ Ian S. Hoffman
Ian S. Hoffman (VSB 75002)
Preston Smith (VSB 96908)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-6406
Email: Ian.Hoffman@arnoldporter.com
Facsimile: (202) 942-5999

Drake W. Darrah (*pro hac vice*)
NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (202) 748-1711
Email: drake.darrah@nad.org
Facsimile: (301) 587-1791

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August 2024, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

/s/ Ian S. Hoffman
Ian S. Hoffman (VA Bar # 75002)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001-3743
Tel.: 202.942.5000
Fax: 202.942.5999
Ian.Hoffman@arnoldporter.com

*Counsel for Plaintiff*