IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LAURA YELLIN, | ) |
|  | ) |
| *Plaintiff*, | ) |
|  | ) |
| v. | ) No. 1:24-cv-1216 (PTG/WBP) |
|  | ) |
| JOSE QUIROZ JR., *et al.*, | ) |
|  | ) |
| *Defendants*. | ) |

## MEMORANDUM ORDER

This matter is before the Court on the remaining Defendants Sheriff Jose Quiroz, Jr. and the named and unnamed Sheriff Captains, Sergeants, and Deputies' (collectively, "Defendants") Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. 9). Plaintiff Laura Yellin filed this action against Magistrate Judge Vern Best; Secretary Karl Hade; the Arlington County Sheriff Jose Quiroz Jr. ("Sheriff Quiroz"); fifteen named Sheriff Captains, Sergeants, and Deputies (collectively, "Sheriff Defendants"); and five unnamed Sheriff's Office employees for their alleged actions related to Plaintiff's arrest and subsequent confinement. Dkt. 1 ("Compl.").

Count I alleged a claim under 42 U.S.C. § 1983 against Sheriff Defendants, five unnamed Sheriff's Office employees, and Sheriff Quiroz in their individual capacities, asserting that they violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *Id.* ¶¶ 84–91. Within Count I, Plaintiff brings an additional Section 1983 claim against Sheriff Quiroz in his individual capacity, alleging that Sheriff Quiroz failed to train and supervise Sheriff Defendants who allegedly subjected Ms. Yellin to violations of her Eighth Amendment right. *Id.* ¶ 92. Counts II and III assert claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 against Sheriff Quiroz, Magistrate Judge Best, and Secretary Hade in

their official capacities. *Id.* ¶¶ 94–132.

Magistrate Judge Best and Secretary Hade filed one Motion to Dismiss (Dkt. 7) and Sheriff Defendants filed a separate Motion to Dismiss (Dkt. 9). The Court heard argument on both Motions to Dismiss. Dkt. 20. From the bench, the Court (1) granted Magistrate Judge Best and Secretary Hade's Motion to Dismiss; (2) denied Sheriff Defendants' Motion to Dismiss as to Counts II and III; (3) took under advisement its ruling on Sheriff Defendants' Motion to Dismiss as to Count I; and (4) ordered the parties to provide supplemental briefing on the issue of qualified immunity. Dkt. 21. Both sides submitted their supplemental briefing. Dkts. 23, 24. Accordingly, the only matter remaining before the Court is Sheriff Defendants' Motion to Dismiss as to Count I.

## I.    Factual Background

At this stage, the following facts from the Complaint are accepted as true:[1]

Plaintiff is a deaf woman who lived in Arlington, Virginia during the events of this case. Compl. ¶ 12. Plaintiff typically wears two cochlear implants. *Id.* ¶ 26. Cochlear implants are small electronic devices without which Plaintiff "cannot hear any sounds." *Id.* During the events at issue here, the batteries to Plaintiff's cochlear implants were not charged. *Id.* ¶ 33. Without charged cochlear implants, Plaintiff could not communicate orally. *Id.*

On July 15, 2023, Plaintiff was arrested for violating a protective order filed by her husband. *Id.* ¶ 34. After Plaintiff was arrested, Plaintiff appeared before Magistrate Judge Vern F. Best in Arlington County for a hearing to determine whether Plaintiff would be detained. *Id.* ¶¶ 38–39. At the proceeding, Magistrate Judge Best ordered Plaintiff to be detained in the Arlington

---

[1] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

County Detention Facility ("ACDF"). *Id.* ¶ 42.

Plaintiff was then transported to ACDF. *Id.* ¶ 43. During the intake process, Plaintiff requested an American Sign Language ("ASL") interpreter, but Sheriff Defendants refused her request. *Id.* ¶ 44. As a result, Plaintiff was unable to convey her medical needs to ACDF personnel or learn ACDF's rules and procedures. *Id.* At the time of these events, Plaintiff suffered from postpartum psychosis and postpartum preeclampsia after having given birth to a child in May 2023. *Id.* ¶¶ 1, 53.

Plaintiff was placed in solitary confinement at ACDF for approximately twenty-three hours each day during her nearly five-week detention. *Id.* ¶¶ 45, 54. Plaintiff was permitted to leave her cell for one hour a day for "recreation." *Id.* ¶ 48. During this recreation time, Plaintiff was also expected to shower, wash her clothing and bedding, and make telephone calls when permitted. *Id.* Plaintiff lacked access to group programming or social activities. *Id.*

## II.  Legal Standard

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility requirement imposes not a probability requirement but rather a mandate that a plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Id.* (citing *Iqbal*, 556 U.S.

at 679 and *Twombly*, 550 U.S. at 557). The complaint must present "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the alleged activity. *Twombly*, 550 U.S. at 545.

When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). A defendant may raise a lack of subject matter jurisdiction in a motion under Federal Rule of Civil Procedure 12(b)(1). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1994). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction is proper by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Brickwood Contractors, Inc. v. Datanet Eng'g*, 369 F.3d 385, 390 (4th Cir. 2004) ("[Q]uestions of subject matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court."); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (noting that in this Circuit, "a federal court is obligated to dismiss a case whenever it appears the court lacks subject matter jurisdiction"). "Although somewhat distinct from subject matter jurisdiction, courts have often considered

immunity arguments . . . on Rule 12(b)(1) motions to dismiss." *Crawford v. Hughes*, No. 3:20-cv-813, 2021 WL 2125031, at *5 n.15 (E.D. Va. May 25, 2021) (quoting *Chien v. Motz*, No. 3:18-cv-106, 2019 WL 346761, at *6 (E.D. Va. Jan. 7, 2019), *report and recommendation adopted*, No. 3:18-cv-106, 2019 WL 346406, at *1 (E.D. Va. Jan. 28, 2019)).

### III.   Analysis

#### A. Section 1983 Claim Against Sheriff Defendants

Sheriff Defendants argue that Plaintiff fails to state a claim under Section 1983 for violations of Plaintiff's Eighth and Fourteenth Amendment rights because Plaintiff does not specifically allege each individual defendant's personal involvement. Dkt. 10 at 3–4.

To state a Section 1983 claim for cruel and unusual punishment, a plaintiff must allege that (1) the complained of "confinement conditions inflict harm that is, 'objectively, sufficiently serious' to deprive prisoners of 'the minimal civilized measure of life's necessities[;]'" and (2) "whether officers subjectively acted with 'deliberate indifference to inmate health or safety' because they knew of but disregarded the inhumane treatment." *Thorpe v. Clarke*, 37 F.4th 926, 933 (4th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 838 (1994)). Section 1983 claims "must satisfy only the usual requirements of notice pleading" and need not be pled with particularity. *Danielson v. City of Virginia Beach*, No. 2:11-cv-253, 2011 WL 3664710, at *2 (E.D. Va. Aug. 19, 2011) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244–45 (4th Cir. 1999)). However, "liability [under Section 1983] will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017).

Plaintiff alleges that: (1) "Sheriff Defendants subjected [Plaintiff] to extended periods of unmitigated segregation and solitary confinement[;]" (2) "solitary confinement poses an objective

5

risk of serious psychological and emotional harm to inmates in violation of the Eighth Amendment[;]" (3) "[t]his risk is even greater for inmates with disabilities[;]" and (4) "Sheriff Defendants disregarded [Plaintiff's] medical and other needs" "despite [their] actual knowledge of [her] substantial medical risks." Compl. ¶¶ 87–91. Sheriff Defendants contend that Plaintiff did "not allege who made the decision to place her in purported sole confinement" and, therefore, the Complaint runs afoul of the requirement that complaints brought pursuant to Section 1983 allege the personal action of an official. Dkt. 10 at 4.

In support of this argument, Sheriff Defendants cite to the Fourth Circuit's decisions in *Wilcox v. Brown* and *Langford v. Joyner*, 62 F.4th 122 (2023). This Court finds that *Wilcox* and *Langford* are distinguishable from the instant case. In *Wilcox*, the Fourth Circuit affirmed the district court's dismissal of a Section 1983 claim against a prison chaplain who had merely been informed of another individual's decision to cancel Rastafarian services. 877 F.3d. at 170. The Fourth Circuit held that the plaintiff had not alleged sufficient involvement by the chaplain because the decision to cancel the services occurred before the chaplain was hired and a different individual was alleged to have made the decision that the services would not resume. *Id.* Here, unlike in *Wilcox*, Plaintiff has alleged that each Sheriff Defendant named in the Complaint was involved in holding her in solitary confinement. Compl. ¶¶ 87–91.

In *Langford*, the Fourth Circuit affirmed dismissal of a claim against federal officers for deliberate indifference to medical needs when the plaintiff's complaint "did not identify who the Defendants [were] beyond being employees at FCI Estill, in what capacity each Defendant interacted with [Plaintiff], or how (or even if) each Defendant was responsible for [Plaintiff's] medical treatment." 62 F.4th at 125. However, the Fourth Circuit also noted that its holding in *Langford* "do[es] not categorically foreclose the possibility that a complaint that makes allegations

6

collectively against 'Defendants' may . . . survive a motion to dismiss." *Id.* at 126. The Court simply "require[s] sufficient facts to allow the court to infer liability as to *each* defendant." *Id.*

Here, unlike in *Langford*, Plaintiff alleges that each Sheriff Defendant was "responsible" for her "detention and/or care while she was at ACDF." Compl. ¶¶ 16–18. Additionally, the Complaint includes certain factual allegations against particular defendants. *See e.g.*, *id.* ¶ 55 ("[Plaintiff] observed Deputy Summers looking into her cell window and laughing at her"); *id.* ¶ 56 ("Deputy Bapoma brought a nurse to [Plaintiff's] cell"); *id.* ¶ 58 ("Defendant Hill . . . never followed up on [Plaintiff's] requests" "for mental health care"). These specific allegations provide detail above merely identifying that the defendants were employees of ACDF. Accordingly, the Court finds that Plaintiff's allegations are sufficient at the motion to dismiss stage to infer liability as to each Sheriff Defendant. The specific actions, or inactions, by Sheriff Defendants will become evident during discovery. *See Meade v. Mynes*, 2020 WL 3697974, at *4 (S.D.W. Va. July 6, 2020) (denying motion to dismiss Section 1983 claim against multiple defendants despite complaint not identifying specific actions of each defendant).

### B. Section 1983 Failure to Train Claim Against Sheriff Quiroz

Plaintiff also brings a failure to train claim, alleging that Sheriff Quiroz violated Plaintiff's Eighth and Fourteenth Amendment rights by not adequately training Sheriff Defendants who held Plaintiff "in solitary confinement and ignore[d] her mental health issues." Compl. ¶ 92. To maintain a failure to train claim at the motion to dismiss stage, a plaintiff must allege that: "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F. Supp. 2d 682,

701 (E.D. Va. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989)).

As to the first prong, Plaintiff has adequately pled that Sheriff Defendants violated her right to be free from cruel and unusual punishment because her allegations are sufficiently particularized to survive a motion to dismiss. *See supra* at 5–7. As to the second prong, Plaintiff may show that Sheriff Quiroz's failure to train evinced deliberate indifference in one of two ways. *Clarke v. Clarke*, No. 3:20-cv-999, 2021 WL 2953673, at *7 (E.D. Va. July 14, 2021). First, Plaintiff could allege that Sheriff Quiroz "w[as] aware of, and acquiesced in, a pattern of constitutional violations." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015). Second, Plaintiff could allege that Sheriff Quiroz failed to train Sheriff Defendants "concerning an obvious constitutional duty that the [Sheriff Defendants] are certain to face." *Brown*, 308 F. Supp. 2d at 704. The second method by which a plaintiff can allege deliberate indifference "is only available in situations where the underlying constitutional right is quite clear." *Id.* The Court finds that Plaintiff has satisfied both methods.

The first method focuses on whether the supervisor had notice of constitutional violations by his subordinates. *Moody*, 93 F. Supp. 3d at 538. Plaintiff attaches to the Complaint a 2016 settlement between the Arlington County Sheriff and the United States. Compl. ¶ 7; Dkt. 1-1. This settlement agreement is related to a lawsuit filed by Abrahem Zemedagegehu for the Sheriff Office's alleged failure to provide Zemedagegehu with ASL interpreters and other auxiliary aids while he was detained at the ACDF. Compl. ¶ 7; Dkt. 1-1 at 3–5. Sheriff Quiroz argues that Plaintiff made only "conclusory" allegations that "Sheriff Quiroz failed to train anyone." Dkt. 10 at 5. Sheriff Quiroz appears to claim that Plaintiff's reference to a 2016 settlement related to a different deaf inmate is insufficient to allege that Sheriff Quiroz was on notice of a pattern of constitutional violations. Dkt. 10 at 5. Sheriff Quiroz does not contend that the specific settlement

8

agreement with regards to treatment of Mr. Zemedagegehu is different from the treatment of Plaintiff such that the agreement could not put Sheriff Quiroz on notice that his subordinates were engaging in constitutional violations. The Court finds that the Complaint and the attached settlement agreement provide sufficient factual enhancement such that Plaintiff's allegations of notice are not merely conclusory.

With regards to the second method of proving deliberate indifference, Plaintiff argues that she has alleged deliberate indifference "concerning an obvious constitutional duty." *Brown*, 308 F. Supp. 2d at 704. Plaintiff contends that solitary confinement can "amount[] to cruel and unusual punishment" and that it is "well established" that failure to provide adequate medical care can also amount to cruel and unusual punishment. Dkt. 16 at 8. Defendants do not challenge in their Motion to Dismiss nor dispute in their Reply that Sheriff Defendants have an obvious constitutional duty to protect the constitutional rights of detainees regarding (1) their conditions of confinement or (2) the provision of adequate medical care. Sheriff Quiroz also does not challenge that he has a duty to train Sheriff Defendants in these respects. Accordingly, for the purposes of this motion, the Court will assume without deciding that Sheriff Quiroz has an obvious constitutional duty to train his subordinates regarding conditions of confinement and provision of adequate medical care. *See Brown*, 308 F. Supp. 2d at 704.

As to the third prong of the deliberate indifference inquiry, Sheriff Quiroz argues that "any purported lack of training on accommodations for a deaf person did not cause [Plaintiff to be held in] solitary confinement." Dkt. 10 at 5. Plaintiff specifically alleges that Sheriff Quiroz failed to train the Sheriff Defendants "on the care of deaf inmates" which "caused them to violate [Plaintiff's] Eighth and Fourteenth Amendment rights." Compl. ¶ 92. The Court finds this allegation sufficient to allege a causal connection. It is plausible that had Sheriff Defendants been

9

trained on how to interact with deaf detainees, Plaintiff may have been provided with an ASL interpreter as she had requested, and Plaintiff may not have been placed in solitary confinement. "[T]he Court should only grant a Rule 12(b)(6) motion where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim." *Brown*, 308 F. Supp. 2d at 707. Because it is plausible that Plaintiff could establish a causal connection based on the facts alleged, the Court finds that Plaintiff's allegations related to causation are sufficient at the motion to dismiss stage. Accordingly, Plaintiff has pled sufficient allegations to maintain her failure to train claim against Sheriff Quiroz.

### C. Qualified Immunity

Defendants contend that they are entitled to qualified immunity because they are sued in their individual capacities.[2] Dkt. 10 at 7–8. As an initial matter, Plaintiff argues that the issue of qualified immunity is not properly before the Court because, in their Motion to Dismiss, Defendants (1) did not argue that Plaintiff did not properly allege any element of her Eighth Amendment claim; and (2) did not properly argue the application of qualified immunity. Dkt. 23 at 4, 8. "Indeed, the Fourth Circuit has been strict in declining to *sua sponte* consider qualified immunity when not properly presented to the district court." *Cantrell v. Frame*, 2019 WL 1234335, at *2 (S.D.W. Va. Mar. 18, 2019). In *Cantrell*, "the defense of qualified immunity was not presented to the court in any form." *Id.* Here, Defendants presented their defense of qualified immunity in their Motion to Dismiss. Dkt. 10 at 7–8. Although Defendants focused only on one prong of the qualified immunity analysis—whether a constitutional violation occurred—the

---

[2] In Defendants' Motion to Dismiss, they also argue that Sheriff Quiroz is entitled to sovereign immunity to the extent he is sued in his official capacity. Dkt. 10 at 7. Plaintiff brings her Section 1983 claims against Sheriff Quiroz in his individual capacity. Compl. ¶¶ 86, 92. Therefore, the Court will not address sovereign immunity.

defense was presented to the Court in Defendants' Motion to Dismiss and therefore is properly before the Court. *See id.* at 8. Even then, Plaintiff correctly notes that in their initial arguments, Defendants' only basis for challenging qualified immunity was Plaintiff's alleged failure to indicate the particular role each defendant played in the alleged misconduct. Dkt. 23 at 8.

Qualified immunity "shield[s] [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013). To determine whether defendants are entitled to qualified immunity, the Court "conduct[s] a two-step inquiry, in either order: (1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation." *Estate of Jones ex rel. Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020).

Plaintiff argues that qualified immunity is a question for the summary judgment stage, and not the motion to dismiss stage. Dkt. 23 at 8. The Supreme Court instructs that qualified immunity provides "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985). As such, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). That being said, the Fourth Circuit has noted that "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005); *see also Riddick v. Barber*, 109 F.4th 639, 650 n.5 (4th Cir. 2024) (quoting *Alford v. Cumberland Cnty.*, 2007 WL 298529, at *3 (4th Cir. Oct. 15, 2007)) ("[Q]ualified immunity typically is best addressed 'at the summary judgment stage after the facts have been developed through discovery.'"). The applicability of the qualified immunity defense

is often decided at summary judgment because whether a constitutional right was clearly established is a "purely legal question." *Willingham*, 412 F.3d at 559. For this reason, "[i]n some cases, the decision [of whether qualified immunity applies] is made in connection with a motion to dismiss." *Alford*, 2007 WL 298529, at *3. In other instances, where there is "a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred,'" such question must be reserved for trial. *Willingham*, 412 F.3d at 559 (citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

Here, Plaintiff alleges her Eighth Amendment right to be free from cruel and unusual punishment was violated when she was held in solitary confinement for approximately five weeks. Compl. ¶¶ 84–93. Defendants dispute that Plaintiff was held in "solitary confinement" and dispute the duration of any such confinement. Dkt. 24 at 2 n.2. While at the motion to dismiss stage the Court must take as true Plaintiff's allegations that she was held in solitary confinement, there is a factual dispute related to the conditions of Plaintiff's confinement and even as to each defendants' role. *See Riddick*, 109 F.4th at 650. Thus, discovery will reveal the facts of Plaintiff's confinement which are required to determine whether Defendants violated clearly established law when they detained Plaintiff.[3] Accordingly, it is improper for the Court to decide, at this stage, whether

---

[3] Because there is a dispute as to the conditions of Plaintiff's confinement, the Court need not determine at this stage whether Plaintiff has a constitutional right to be free from solitary confinement for a period of nearly five weeks. However, it is worth noting that the Fourth Circuit has recognized that "there is *not a single published study* of solitary or supermax-like confinement in which nonvoluntary confinement lasted for longer than 10 days, where participants were unable to terminate their isolation at will, *that failed to result in negative psychological effects*." *Porter v. Clarke*, 923 F.3d 348, 365 (4th Cir. 2019), *as amended* (May 6, 2019); *see also Thorpe v. Clarke*, 37 F.4th 926, 937 (4th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (describing *Porter*'s holding that "severe isolation alone can deprive prisoners of 'the minimal civilized measures of life's necessities,' violating the Eighth Amendment"). Further, Virginia law provides that an individual in restorative housing, defined as "special purpose bed assignments operated under maximum security regulations and procedures and utilized for the personal protection or custodial management of an incarcerated person," must "be offered a minimum of

Defendants are entitled to qualified immunity.

### IV.   Conclusion

The Court finds that Plaintiff has plausibly alleged Section 1983 claims against the Sheriff Defendants for violations of Plaintiff's Eighth and Fourteenth Amendment rights and against Sheriff Quiroz for a failure to train. The Court also declines to rule on the applicability of the qualified immunity defense at the motion to dismiss stage. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Count I is **DENIED**; it is further

**ORDERED** that Defendants file an Answer as to Count I within twenty-one (21) days of the date of this Order.

Entered this 30th day of June, 2025
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

---

four hours of out-of-cell programmatic interventions or other congregate activities per day." Va. Code Ann. §§ 53.1-39.2(A), (B)(5). Plaintiff alleges she was held in solitary confinement for twenty-three hours a day. Compl. ¶ 45.